RAIL
U.S. COURT OF APPEALS
RECEIVED
CLERK
SEP 09 2025
ATLANTA, GA

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

William James and
Terri Tucker (Lowe),
Appellants,


v.

Barbara Hunt, Tyler Perry,
Oprah Winfrey, et al., and
Judge Thomas W. Thrash, Jr.
Appellees.

Civil Action No. 17-14866 – 66

District Court Civil Action No. 1:17-cv-01181-TWT

Confidential: Judicial Complaint No. 11-25-90153 (pending)

Appellants Reply to Appellees' Response to Appellants Motions to Recall Mandates

---

## APPELLANTS REPLY TO APPELLEES RESPONSE TO APPELLANTS MOTIONS TO RECALL MANDATES

---

Appellate Action No. 17-14866

## PRELIMINARY STATEMENT

Appellees' response continues a persistent pattern of misrepresentation, procedural

gamesmanship, and factual distortion designed to shield both party and judicial

misconduct from meaningful review. Through deliberate misstatements of

procedural history, the identity of the issuing judge, and the true scope of the

injunction, Appellees seek to obscure the nature of the operative orders and evade

controlling law and facts that fundamentally undermine their position. They ignore

binding Supreme Court and Eleventh Circuit precedent that protects Appellants'

right to seek post-judgment relief for fraud upon the court and judicial misconduct. This reply corrects the record, rebuts Appellees' legal and factual distortions, and preserves all objections and claims for further review.

From outset, Appellees—joined by Judge Thrash—have avoided the merits and orchestrated a scheme to induce the Eleventh Circuit to disregard due process and law. Rather than address plaintiffs' claims or defaults, Appellees relied solely on an improper injunction and concealment to foreclose rights. This Court must enforce the Constitution and precedent, not endorse circumvention of justice.

# TABLE OF CONTENTS

**Section**                                                                                                    **Pages(s)**

**Preliminary Statement**                                                                                           1

**I. Appellees' Misrepresentation of the Record, Judicial Authority,**

**and Case Scope**                                                                                                 11

A. Misstatement of Case Number and Judicial Authority                                                              11

B. Orders 138 Were Not Final and Excluded Parties                                                                  11

C. Intentional Mischaracterization of Claims                                                                       12

D. Systematic Gamesmanship and Judicial Conflicts                                                                  12

E. Appeals and Missing Record                                                                                      13

F. Appellees' Shifting Narrative and Double Doctrine Orders: A Pattern of

Evasion and Obfuscation                                                                                            14

G. Appeals and Missing Record                                                                                      16

**II. Appellees' Injunction Argument is Legally Baseless and Cannot Bar**

**Appellants' Filings**                                                                                            16

A. No Finality or Jurisdiction                                                                                     16

B. Rule 60(d)(4)-(6) and Appellate Authority                                                                       16

C. Procup v. Strickland, 792 F.2d 1069 (11th Cir. 1986)                                                            17

**III. Appellees' Defaults and Litigation Misconduct are Undisputed**     17

A. Appellees have defaulted repeatedly in this action, including     17

**IV. Appellees' Contempt Accusation is Misplaced—**

**They are in Contempt of Court**     18

**V. The Appeals Were Decided Without the Full Record—**

**Due Process Violation**     19

**VI. The "Vexatious Litigant" Label is a Strategic Ploy to Evade the Merits**

**and Conceal Defense Misconduct**     19

A. Vexatious Litigant Label     19

B. The True Vexatious Litigants: Appellees' Pattern of Procedural Abuse

    and Judicial Manipulation     21

C. Appellees, Not Appellants, Should Be Sanctioned for Contempt and Fraud

    Upon the Court—Appellees' Vexatious Avoidance of the Merits     23

**VII. The Injunction and Judgment Orders Were Duplicative, Defective, and**

**Misrepresented as Final**     25

A. The "Double Doctrine" Problem: Duplicative and Defective Orders     25

B. Lionsgate's Exclusion and Lack of Finality     25

C. Misrepresentation to the Appellate Court     26

D. The Consequences of Jurisdictional Misrepresentation     26

E. Post Judgment Order Doc. 208 Devoid of Law      26

**VIII. Appellees Remain in Default and Lack Standing to Brief or Appeal**      27

A. Default Bars Further Participation Absent Relief      28

B. Supreme Court and Eleventh Circuit Authority      28

C. Appellees' Technical Default Continues Through Post-Judgment      29

D. The Injunction Cannot Cure Default or Confer Standing      29

E. Summary      29

**IX. Appellants' Filings Were Necessary and Substantive; Appellees' Responses Were Procedurally and Substantively Deficient**      30

A. Appellants' Filings Were Required to Preserve Rights and Comply With Rule 60(b)(4)-(6) and (d)(3)      30

B. Appellees' Failure to Answer the Merits, Procedural Defaults, and Untimely Responses      31

C. Appellees' Reliance on the Injunction to Shield Misconduct and Judicial Conflict      32

D. Judge's Failure to Address the Merits and Duty to Recuse      32

E. Appellees' Continued Default and Evasion of RICO Claims      33

F. The Necessity of Appellants' Supplemental Filings and Judicial Integrity      33

G. The Judge's Refusal to Address Merits or Recuse—A Due Process

Violation     34

H. The Pattern of Judicial and Defense Evasion Supports Appellants'

RICO Claims     35

I. The Appellees' Use of Appellants' Arguments to Deflect Their Own

Misconduct     35

J. The Cumulative Effect: A Complete Denial of Due Process     36

**X. APPELLANTS' RIGHT TO INVOKE POST-JUDGMENT RELIEF**

**FOR FRAUD ON THE COURT IS SUPPORTED BY CONTROLLING**

**LAW; APPELLEES CITE NO CONTRARY AUTHORITY**     36

A. Appellants' right to bring post-judgment motions     36

B. Evasion of Law Using Injunction Illegally     38

**XI. CLARIFICATION OF PARTY DESIGNATIONS**     41

**XII. CONCLUSION**     42

**CERTIFICATE OF COMPLIANCE**     43

**CERTIFICATE OF SERVICE**     44

# TABLE OF AUTHORITIES

**Cases**                                                         **Page(s)**

*Armstrong v. Manzo,*

380 U.S. 545 (1965) ........................................................................ 6, 16

*Bass v. Hoagland,*

172 F.2d 205 (5th Cir. 1949) ................................................................ 10

*Booker v. Singletary,*

90 F.3d 440 (11th Cir. 1996) ...................................................... 5, 13, 28

*Calderon v. Thompson,*

523 U.S. 538 (1998) ................................................................... 5, 13, 28

*Caperton v. A.T. Massey Coal Co.,*

556 U.S. 868 (2009) ...................................................... 2, 6, 13, 15, 28

*Catlin v. United States,*

324 U.S. 229 (1945) .............................................................................. 9

*Celotex Corp. v. Catrett,*

477 U.S. 317 (1986) .............................................................................. 5

*Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.,*

561 F.3d 1298 (11th Cir. 2009) ........................................................... 10

| Cases | Page(s) |
|---|---|

*Fritz v. Standard Sec. Life Ins. Co.,*

676 F.2d 1356 (11th Cir. 1982) .............................................................. 28

*Griggs v. Provident Consumer Discount Co.,*

459 U.S. 56 (1982) ................................................................................. 4

*Greenlaw v. United States,*

554 U.S. 237 (2008) .............................................................................. 16

*Haines v. Kerner, 404*

U.S. 519 (1972) ............................................................................. 3, 6, 16

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.,*

322 U.S. 238 (1944) .................................................................... 5, 13, 28

*Jackson v. Beech,*

636 F.2d 831 (D.C. Cir. 1980) .............................................................. 10

*Liljeberg v. Health Services Acquisition Corp.,*

486 U.S. 847 (1988) ...................................................... 2, 6, 13, 15, 28

*Living Designs, Inc. v. Dupont,*

431 F.3d 353 (9th Cir. 2005) .................................................................. 3

**Cases**                                                                          **Page(s)**

*Moore v. State of Florida,*

703 F.2d 516 (11th Cir. 1983) ................................................................ 6

*Nishimatsu Constr. Co. v. Houston Nat'l Bank,*

515 F.2d 1200 (5th Cir. 1975) .............................................................. 10

*Procup v. Strickland,*

792 F.2d 1069 (11th Cir. 1986) ........................................................ 5, 13

*Solaroll Shade & Shutter Corp. v. Bio-Energy Sys.,*

803 F.2d 1130 (11th Cir. 1986) .......................................................... 10

*Thompson v. Wooster,*

114 U.S. 104 (1885) .......................................................................... 10

*United States v. $55,518.05 in U.S. Currency,*

728 F.2d 192 (3d Cir. 1984) .............................................................. 11

**Statutes and Rules**

18 U.S.C. § 1964(c) ............................................................................ 3

28 U.S.C. § 1291 ................................................................................. 9

28 U.S.C. § 455 .................................................... 2, 13, 15, 28

**Statutes and Rules**                                                     **Page(s)**

Fed. R. Civ. P. 12(b)(6) ........................................................................... 28

Fed. R. Civ. P. 15(a)(1) ........................................................................... 28

Fed. R. Civ. P. 54(b) ................................................................................. 8

Fed. R. Civ. P. 55(a)-(b) ......................................................................... 10

Fed. R. Civ. P. 56 ..................................................................................... 5

Fed. R. Civ. P. 60(b), 60(d)(3) ...................................................... 5, 12, 28

# I. APPELLEES' MISREPRESENTATION OF THE RECORD, JUDICIAL AUTHORITY, AND CASE SCOPE

Appellees repeatedly mischaracterize the procedural posture, substance, and controlling law of this case in an effort to shield both party and judicial misconduct from meaningful review.

## A. Misstatement of Case Number and Judicial Authority

Appellees falsely attribute the operative injunction and key orders to "Case No. 1:17-CV-1181-RWS," implying Judge Richard W. Story issued the relevant injunction. In fact, Judge Story was removed from the case as of Document 71, and all subsequent orders—including the injunction at Docket 168 and judgment on the pleadings at Docket 138—were issued by Judge Thomas W. Thrash, Jr. ("TWT"). Judge Thrash was a named defendant at the time, never relieved by a three-judge panel or chief judge as required by law, and was represented by the United States Attorney's Office. Orders issued under these circumstances are void for want of jurisdiction and violate due process and judicial impartiality. See *Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 865 (1988); *Caperton v. A.T. Massey Coal Co.,* 556 U.S. 868, 881 (2009).

## B. Orders 138 Were Not Final and Excluded Parties

Order 138 was not final as to all parties. Notably, Lionsgate was intentionally

excluded from the ruling, despite being included in Appellees' own filings (Doc. 74). This omission rendered the order non-final and defective, especially given the operative amended complaint (Doc. 85), which Appellees failed to answer—resulting in default.

## C. Intentional Mischaracterization of Claims

Appellees repeatedly and falsely characterize Appellants' predicate acts of fraud, obstruction, and RICO violations as mere "copyright infringement." This is a willful misrepresentation. The case is fundamentally about fraud upon the court, litigation misconduct, default, and deprivation of a fair opportunity to litigate—not about simple copyright claims. See 18 U.S.C. § 1964(c); *Living Designs, Inc. v. Dupont*, 431 F.3d 353 (9th Cir. 2005).

## D. Systematic Gamesmanship and Judicial Conflicts

The defense and the judge engaged in a pattern of procedural gamesmanship:

• Defaulting on the amended complaint (Doc. 85), triggering a duty to answer and resulting in five defaults in this case.

• Filing duplicative answers after the deadline, using the same counsel for multiple parties in a coordinated defense.

• Failing to properly respond to summary judgment under Rule 56 and Local Rule 56-1 (Doc. 61, 211).

• Engaging in "judge shopping" by requesting Judge Thrash by name, despite his family member Annie Thrash's involvement in a Tyler Perry production—a clear conflict.

• The judge ruling on his own status as a defendant, never relieved by a neutral panel, and issuing orders in excess of jurisdiction.

Defendants' Procedural Shell Game and the Fiction of Permission

Defendants have calculatedly confused the record and subverted the law by shifting narratives about who, if anyone, can grant permission for post-judgment filings. In Document 198, Defendants told the district court Plaintiffs needed permission from Judge Thrash. Yet, in their Response to the Recall Mandate, Defendants claimed Plaintiffs should seek permission from Judge Richard Story— who, as the record shows, was no longer presiding after reassignment in Document 71 and never returned. Judge Thrash himself, in Document 208, stated that permission must be sought from the "undersigned," further muddying the waters. At no time did the court transfer the case back to Judge Story, nor does the record reflect such authority.

This procedural shell game is designed to confuse Plaintiffs and the Court, minimize harm from the improper injunction, and switch judges when it suits Defendants' narrative. Most importantly, the law is clear: no permission is required

for post-judgment motions alleging fraud upon the court (see Hazel-Atlas Glass

Co. v. Hartford-Empire Co., 322 U.S. 238 (1944); Fed. R. Civ. P. 60(d)(3)), and

any order or injunction barring such filings is void. Defendants' shifting arguments

and the judge's inconsistent orders are part of a broader strategy to evade review,

obscure misconduct, and prevent the Court from reaching the merits of Plaintiffs'

claims.

The record is clear: at no point did the district judge or Defendants provide a

lawful basis for requiring permission, nor did they address the controlling

authorities that protect Plaintiffs' right to bring post-judgment motions for fraud

upon the court. This is yet another example of Defendants' attempt to subvert the

law and manipulate the narrative to shield their own violations and prevent recall

of the mandate.

Appellees continue to mischaracterize this action as duplicative copyright

litigation, when the operative pleadings and record establish distinct RICO claims

predicated on a pattern of racketeering, not limited to prior copyright cases. As

detailed in our Rule 60(b) motion (Doc. 197) and supporting Exhibits 5, 6, and 7,

Appellants have thoroughly distinguished RICO elements from copyright

infringement, with clear legal and factual analysis. Both the original and amended

complaints (Docs. 1, 85) set forth all four RICO elements with supporting

evidence. Additionally, Exhibits 1–3 for Doc. 211 demonstrate that the prior actions addressed only copyright infringement, while this case asserts broader RICO violations. Neither Appellees nor the district court have identified any deficiency in the RICO pleadings' specificity or factual support. The record and referenced exhibits fully support Appellants' distinct, well-pleaded RICO claims for the Court's review

## .F. Appellees' Shifting Narrative and Double Doctrine Orders: A Pattern of Evasion and Obfuscation

Throughout these proceedings, Appellees have consistently sought to change the narrative away from the actual subject of fraud upon the court. When faced with well-pleaded allegations of judicial misconduct and RICO violations, Appellees attempt to divert the Court's attention to arguments about an injunction—an injunction that, as a matter of law, cannot and does not bar post-judgment motions for fraud upon the court. In prior litigation, Appellees similarly mischaracterized this civil RICO action as a mere copyright infringement dispute, using this misrepresentation to justify procedural maneuvering and judicial assignment, even though the RICO merits were never adjudicated or closed and the operative complaint was always brought under RICO.

This pattern of narrative switching is further compounded by the district judge's "double doctrine" rulings—first in Document 138 (judgment on the pleadings) and then again in Order 168 (the injunction)—wherein the court issued duplicative rulings on the same issues, adding or omitting Appellees without proper legal basis. The judge's approach, as detailed in the recall mandate, created the illusion of finality while in fact leaving critical parties and claims unresolved. All of these procedural contortions serve as a mirage to obscure the underlying indiscretions of the Appellees and to shield both party and judicial misconduct from meaningful review.

The Court should not be misled by these shifting narratives or procedural distractions. The record is clear: this case is, and always has been, about fraud upon the court, RICO violations, and the denial of due process—not simply copyright infringement or the enforcement of an improper injunction.

## G. Appeals and Missing Record

This appeal (and 18-13553) was decided without the benefit of a complete record: key documents such as Doc. 85 (amended complaint), Doc. 31 (motion for judge by name), Doc. 42 (objection to Tom Ferber's appearance), and Appellants' rebuttals were omitted or ignored. This undermined appellate review and resulted in rulings based on incomplete and misleading information.

## II. APPELLEES' INJUNCTION ARGUMENT IS LEGALLY BASELESS AND CANNOT BAR APPELLANTS' FILINGS

Appellees' assertion that the injunction bars all post-judgment filings is contrary to law and the U.S. Constitution:

### A. No Finality or Jurisdiction

The injunction was issued while the district court was divested of jurisdiction by pending appeals (see *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56 (1982)), and after the judge was named as a defendant. Orders 154 and subsequent filings were entered while the case was on appeal, making them void ab initio.

### B. Rule 60(d)(3) and Appellate Authority

Appellants' motions—including to recall the mandate—are expressly permitted under Rule 60(d)(3), Fed. R. Civ. P. and Supreme Court/Eleventh Circuit precedent (*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944); *Calderon v. Thompson*, 523 U.S. 538, 554 (1998); Booker v. Singletary, 90 F.3d 440, 442 (11th Cir. 1996)). There is no time limit for seeking relief for fraud upon the court, and no "permission" from a conflicted or disqualified judge is required. Any contrary rule would allow a judge to shield his own misconduct from review, in direct violation of 28 U.S.C. § 455 and due process.

## C. *Procup v. Strickland*, 792 F.2d 1069 (11th Cir. 1986)

Even the broadest filing injunctions must allow access to the courts for legitimate

claims, especially those alleging fraud, misconduct, or jurisdictional defects.

## III. APPELLEES' DEFAULTS AND LITIGATION MISCONDUCT ARE UNDISPUTED

### A. Appellees have defaulted repeatedly in this action, including

- Failure to Answer the Amended Complaint (Doc. 85): Appellees failed to answer or otherwise respond to the operative complaint for over two months, triggering default by operation of law (Fed. R. Civ. P. 55) Default Doc. 119.

- Improper, Duplicative Answers: Appellees filed late, duplicative answers using the same counsel and content as other parties, further evidencing a coordinated defense to evade adjudication (Doc. 33, 43, 44, 54, 55, 56).

- Failure to Respond to Summary Judgment: Appellees did not respond to summary judgment as required by Rule 56 and Local Rule 56-1, further compounding their default (*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

- Improper Omnibus Motions: Appellees used omnibus motions to avoid addressing specific claims and failed to respond to key filings, violating procedural rules (Doc. 67, 206).

- Judge's Conflict of Interest and Self-Rulings: Judge Thrash continued to rule on his own status and interests, never being relieved by a neutral panel, in violation of 28 U.S.C. § 455 and Supreme Court precedent (*Caperton, Liljeberg*).

## IV. APPELLEES' CONTEMPT ACCUSATION IS MISPLACED—THEY ARE IN CONTEMPT OF COURT

Appellees' attempt to cast Appellants as in contempt is projection. As licensed officers of the court, their conduct—defaulting, misrepresenting the record, engaging in judge shopping, ignoring conflicts, and repeatedly violating procedural rules—constitutes contempt and fraud upon the court. Their actions have deprived Appellants of a fair, full, and impartial opportunity to litigate on the merits (*Moore v. State of Florida*, 703 F.2d 516 (11th Cir. 1983); *Armstrong v. Manzo*, 380 U.S. 545 (1965)).

## V. THE APPEALS WERE DECIDED WITHOUT THE FULL RECORD—DUE PROCESS VIOLATION

Both this appeal and 18-13553 were decided without the benefit of all operative documents, including:

- Doc. 85 (amended complaint and default)
- Doc. 31 (motion for judge by name)

- Doc. 42 (objection to transfer to judge by name)

- Appellants' rebuttals and oppositions (in recall mandate)

This deprived the appellate courts of critical context and resulted in rulings based on incomplete, misleading, and prejudicial information, violating due process (*Haines v. Kerner*, 404 U.S. 519 (1972)).

## VI. THE "VEXATIOUS LITIGANT" LABEL IS A STRATEGIC PLOY TO EVADE THE MERITS AND CONCEAL DEFENSE MISCONDUCT

### A. Vexatious Litigant Label

Appellees' repeated invocation of the "vexatious litigant" label is a transparent effort to distract from their own procedural defaults, misconduct, and the substantive merits of Appellants' claims. This label is wielded not as a reflection of Appellants' conduct, but as a defensive tactic to:

- Avoid answering the merits of the fraud, RICO, and due process violations at the heart of this case;

- Obscure Appellees' repeated defaults and the judge's ongoing conflicts of interest, including being chosen by name after a family member's involvement with a party (Tyler Perry);

- Shield from scrutiny their own acts of fraud upon the court, collusion with a conflicted judge, and repeated procedural violations.

Labeling Appellants as vexatious is a calculated attempt to prejudice the Court, suppress legitimate legal redress, and avoid accountability for their own indiscretions. The record shows Appellants' filings are direct responses to ongoing violations of due process and judicial integrity—not harassment or abuse of process. Moreover, Appellees have sought to exploit Appellants' pro se status, attempting to marginalize their claims and ignore the substance of the misconduct and fraud upon the court raised in Appellants' recall mandate. The law—not party status—controls, and Appellees cannot evade accountability by targeting pro se litigants or misrepresenting the legal standards.

Defendants improperly used summary judgment and injunction procedures to bar Appellants from filing post-judgment motions, even though summary judgment is not a lawful means to control future filings. Summary judgment resolves merits, not court access. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Injunctions restricting filings require specific findings, notice, and due process. See *Procup v. Strickland*, 792 F.2d 1069, 1074 (11th Cir. 1986). The injunction here was not based on any finding of vexatiousness or bad faith, but on a mischaracterization of Appellants' claims. At no time did Defendants file a motion for sanctions under Rule 11, nor did the district court make any formal finding of vexatiousness or bad faith against Appellants. Most critically, controlling law

prohibits using injunctions to bar fraud-on-the-court or Rule 60(b) motions. See

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944) ("There

is no time limit for setting aside judgments for fraud upon the court. The integrity

of the judicial process must be preserved."). The record contains no lawful basis

for barring Appellants' filings or labeling them as vexatious.

## B. The True Vexatious Litigants: Appellees' Pattern of Procedural Abuse and Judicial Manipulation

Appellees, not Appellants, are the true vexatious litigants in this case. The record is

replete with instances where Appellees have defaulted, filed procedurally improper

and unauthorized motions, and engaged in conduct that flagrantly violates both the

letter and spirit of the law. Despite being repeatedly in default, Appellees have

continued to flood the docket with motions and filings they are not entitled to

make—motions that, by law, are barred due to their procedural status.

Worse still, Appellees have acted with the apparent confidence of parties who

know the outcome in advance, as evidenced by filings such as Document 87, where

they brazenly declared that discovery was unnecessary—as if the facts and result

were predetermined due to their relationship with the judge. The undisputed

personal connection between Judge Thrash and Annie Thrash, who is directly

linked to Tyler Perry's TV show "Too Close to Home," has never been denied or

addressed by any defendant or the judge himself. Instead, Appellees have exploited this relationship to manipulate the process, secure favorable rulings from a judge they requested by name, and avoid the neutral application of law.

Appellees' conduct—soliciting rulings from a conflicted judge, filing motions during periods when the court lacked jurisdiction, and persistently ignoring their own procedural bars—constitutes the very definition of vexatious litigation. Their actions not only violate professional and ethical duties as officers of the court, but also undermine the adversarial process and erode public confidence in the judiciary.

It is particularly egregious that Appellees have sought to weaponize the "vexatious litigant" label against Appellants, simply because Appellants have invoked controlling law, exercised their rights as pro se litigants, and exposed Appellees' legal and procedural violations. Under the law, it is not the party who prevails on the merits or insists on the enforcement of procedural and constitutional rights who is vexatious—it is the party who, in default and in violation of law, manipulates the process to evade accountability.

The appellate court's duty is to uphold the law—not to shield lawyers or judges from scrutiny, nor to perpetuate a double standard against pro se litigants. Appellants' rights matter, and when the law is on their side, the law—not labels or

gamesmanship—must prevail. To allow Appellees to continue this pattern, and to permit the "vexatious" label to be misused as a tool of suppression, would fundamentally undermine the integrity of the legal system.

This Court must recognize the true source of vexatious litigation in this case and ensure that the rights of pro se litigants, and the rule of law itself, are not sacrificed to procedural gamesmanship or judicial favoritism.

## C. Appellees, Not Appellants, Should Be Sanctioned for Contempt and Fraud Upon the Court—Appellees' Vexatious Avoidance of the Merits

Contrary to the narrative advanced by Appellees, the record demonstrates that it is the Appellees—not the Appellants—who are in contempt of court and who should be sanctioned for their conduct in this litigation. Appellees have persistently manipulated the judicial process, including by submitting improper letters and motions designed to induce the judge to violate controlling law on their behalf. This pattern of conduct—effectively treating the court as if they possess a "secret button" to circumvent the law—reflects an improper, personal relationship between the judge and the Appellees, a relationship that has tainted the entire proceeding.

This is precisely why Appellants have repeatedly and properly moved for recusal under 28 U.S.C. § 455, especially after the judge was requested by name by the

Appellees. The personal connection is further evidenced by the judge's willingness to enter orders devoid of legal authority, including Order 208, which bars post-judgment filings in direct violation of Supreme Court and Eleventh Circuit law. The judge's refusal to recuse, and his continued rulings on his own alleged misconduct, constitute structural due process violations and grounds for vacatur. Moreover, the concealment of critical documents from appellate review— including Document 31 (motion for judge by name), Document 15 (Judge Story's order that set the case in order), Document 85 (the operative amended complaint establishing Appellees' default), and supporting evidence in Documents 86 and 88—further demonstrates the extent of the procedural gamesmanship and fraud perpetrated by the Appellees and abetted by the judge. The transfer of the case from Judge Richard W. Story to Judge Thomas W. Thrash, Jr. as of June 22, 2017, and the subsequent exclusion of Judge Story from the record, are additional facts that were actively concealed.

Appellees' persistent perjury, fraud upon the court, and default—never cured or set aside—mean that, as a matter of law, they lack standing to participate in these proceedings. Their continued involvement, enabled by judicial misconduct, only compounds the due process violations and underscores the necessity for appellate intervention and recall of the mandate.

## VII. THE INJUNCTION AND JUDGMENT ORDERS WERE DUPLICATIVE, DEFECTIVE, AND MISREPRESENTED AS FINAL

Appellees and the district judge have repeatedly misrepresented the nature and effect of the key orders in this case, further compounding procedural irregularities and due process violations.

### A. The "Double Doctrine" Problem: Duplicative and Defective Orders

The injunction order (Doc. 168) and the judgment on the pleadings (Doc. 138) are not only legally intertwined but duplicative in substance. Both orders purport to resolve the same underlying issues and claims, yet neither achieves true finality as required by federal law. Critically, the judgment on the pleadings (Doc. 138) did not resolve claims as to all parties—most notably, Lionsgate was intentionally excluded from the ruling, despite being named in the operative pleadings and defense filings (see Doc. 74).

### B. Lionsgate's Exclusion and Lack of Finality

The omission of Lionsgate from the court's dispositive orders rendered those orders non-final and defective as a matter of law. Under Fed. R. Civ. P. 54(b), a judgment is not final if it does not dispose of all claims against all parties, absent

an express determination and direction for entry of judgment. No such determination was made here.

## C. Misrepresentation to the Appellate Court

When the appellate court directly inquired about the finality of the district court's orders on January 24, 2018, the district judge affirmatively represented that his orders were final and disposed of all parties and claims. This was false. The record demonstrates that Lionsgate was never ruled upon, and the duplicative nature of the orders (Docs. 138 and 168) further clouds the procedural status. This misrepresentation deprived Appellants of a meaningful appellate review and constitutes a violation of due process and the integrity of the judicial process.

## D. The Consequences of Jurisdictional Misrepresentation

Jurisdictional finality is a prerequisite for appellate review (28 U.S.C. § 1291; *Catlin v. United States,* 324 U.S. 229, 233 (1945)). Where a district court misrepresents the finality of its orders, and the record shows unresolved claims or parties, any subsequent rulings or injunctions are void for lack of jurisdiction. This is especially egregious where, as here, the district judge was a named defendant and never relieved by a neutral panel, magnifying the due process violations.

## E. Post Judgment Order Doc. 208 Devoid of Law

Moreover, it was not merely arbitrary but unlawful for the district judge to issue

Orders 208 (and similar orders) barring Appellants' post-judgment motions for

fraud upon the court, particularly where the judge himself was the subject of those

very allegations. The order is devoid of any citation to authority permitting such a

bar, and the judge's decision to rule on his own alleged misconduct directly

contradicts the requirements of 28 U.S.C. § 455 and binding Supreme Court

precedent. The law is unequivocal: a judge must recuse in any proceeding where

his impartiality is reasonably questioned, especially when accused of fraud upon

the court or judicial misconduct. See *Caperton v. A.T. Massey Coal Co.*, 556 U.S.

868, 881 (2009); *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 865

(1988). The judge's refusal to do so, and his entry of orders in his own defense, is

itself a violation of due process and a further act of judicial misconduct. This is

precisely why the Supreme Court has held that litigants cannot be barred from

seeking post-judgment relief for fraud upon the court, and why any such order

entered under these circumstances is void.

## VIII. APPELLEES REMAIN IN DEFAULT AND LACK STANDING TO BRIEF OR APPEAL

Appellees' ongoing reliance on the injunction and their continued briefing in the

Eleventh Circuit are procedurally improper and legally unsustainable. The record is

clear: after Appellants filed the operative amended complaint (Doc. 85), Appellees never answered or otherwise responded as required by the Federal Rules of Civil Procedure, resulting in default. This default was never set aside, vacated, or cured.

## A. Default Bars Further Participation Absent Relief

It is black-letter law that a party in default—having failed to answer an amended complaint—cannot participate in subsequent proceedings, including briefing or appeals, unless and until the default is set aside. See Fed. R. Civ. P. 55(a)-(b); *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact… A defaulted defendant is not entitled to participate further in the proceedings unless the default is set aside."); *Bass v. Hoagland*, 172 F.2d 205, 210 (5th Cir. 1949) (defaulted party "has no standing to appear in any way").

## B. Supreme Court and Eleventh Circuit Authority

The U.S. Supreme Court has long held that defaulted parties lose the right to defend on the merits or participate in further litigation unless they first move to set aside the default. See *Thompson v. Wooster*, 114 U.S. 104, 111 (1885) ("A party who makes default thereby confesses the allegations in the bill, and is not entitled to be heard further in defense unless the default is set aside."); *Jackson v. Beech,*

636 F.2d 831, 835 (D.C. Cir. 1980) (party in default "has no standing to contest the factual allegations").

The Eleventh Circuit is clear: "A party who has defaulted loses his standing to contest the merits of liability." *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.,* 561 F.3d 1298, 1307 (11th Cir. 2009); *Solaroll Shade & Shutter Corp. v. Bio-Energy Sys.,* 803 F.2d 1130, 1132 (11th Cir. 1986) ("A defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact.").

## C. Appellees' Technical Default Continues Through Post-Judgment

Appellees have never answered the substance of Appellants' post-judgment motions, continuing to rely on an injunction that is itself void and violative of due process. Their failure to cure default, respond to the merits, or seek relief under Rule 55 or Rule 60 means they remain in technical default. As such, they have no standing to brief, appeal, or otherwise participate in these proceedings.

## D. The Injunction Cannot Cure Default or Confer Standing

Appellees' invocation of the injunction as a shield is procedurally improper. The injunction was entered after default, by a conflicted judge, and cannot operate to revive rights that were lost by default. See *United States v. $55,518.05 in U.S. Currency,* 728 F.2d 192, 194 (3d Cir. 1984) ("A default judgment entered by a

court having jurisdiction is binding on the defaulting party as to all matters pleaded.").

**E. Summary**

Because Appellees are and remain in default, they are not entitled to brief, appeal, or participate in these proceedings. Their continued participation—without ever having set aside the default—renders all of their filings procedurally improper and void as a matter of law.

## IX. APPELLANTS' FILINGS WERE NECESSARY AND SUBSTANTIVE; APPELLEES' RESPONSES WERE PROCEDURALLY AND SUBSTANTIVELY DEFICIENT

**A. Appellants' Filings Were Required to Preserve Rights and Comply With Rule 60(b)(4)-(6) and (d)(3)**

Contrary to the Appellees' mischaracterization of a "slew of motions" as abusive, each filing by Appellants was a necessary step to preserve rights, supplement the record, and comply with the procedural requirements for relief under Fed. R. Civ. P. 60(b)(3) (fraud, misrepresentation, or misconduct) and 60(d) (fraud on the court). Appellants' filings included:

- The principal Rule 60(b) and 60(d) motions, which set forth the grounds for relief based on newly discovered evidence, fraud, judicial misconduct, and procedural irregularities;

- Supplements to the record, necessitated by the Appellees' improper ex parte communications—including an injunction letter submitted to the clerks and judge outside normal adversarial process, in violation of due process and local rules;

- Additional supplements when it was discovered that the transaction list and critical documents were never transmitted to the appellate court, depriving Appellants of a full and fair appellate review;

- Motions and briefs clarifying the application of controlling U.S. Supreme Court and Eleventh Circuit precedent, to ensure the Court was aware of the binding law on due process, fraud on the court, and the necessity of recusal.

## B. Appellees' Failure to Answer the Merits, Procedural Defaults, and Untimely Responses

Appellees never answered the substance of Appellants' Rule 60(b) or 60(d) motions. Instead, they responded with a letter—failing to address any of the merits or factual allegations—thereby waiving opposition to the relief sought. When Appellants filed an unopposed motion (as required by local rules when no timely

opposition is filed), Appellees belatedly filed a consolidated "omnibus" motion after the time to respond had expired and after the motion was terminated. This late filing did not address the merits, but merely recycled their prior arguments about the injunction, again seeking to silence Appellants rather than engage the substance of fraud, RICO, or due process violations.

## C. Appellees' Reliance on the Injunction to Shield Misconduct and Judicial Conflict

Appellees' persistent invocation of the injunction—rather than answering the merits—is a procedural and substantive default. Their filings sought only to bar Appellants from further filings, not to address the underlying fraud, judicial conflict, or RICO predicate acts. This is a violation of Supreme Court and Eleventh Circuit law, which prohibits using procedural orders to shield fraud or judicial misconduct (*Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* 322 U.S. 238, 246 (1944); *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 865 (1988); *Caperton v. A.T. Massey Coal Co.,* 556 U.S. 868, 881 (2009)).

## D. Judge's Failure to Address the Merits and Duty to Recuse

The judge's orders on the record failed to address the substance of Appellants' Rule 60(b) or 60(d) motions, instead asserting only that Appellants had violated his prior order. This is a textbook denial of due process. When a judge is accused of

fraud or conflict, he is required to recuse and have the matter assigned to a neutral judge (28 U.S.C. § 455; Caperton, 556 U.S. at 881). The judge's refusal to do so, and the entry of orders on his own misconduct, further violates Appellants' constitutional rights.

## E. Appellees' Continued Default and Evasion of RICO Claims

Even after Appellants filed a summary judgment motion, Appellees failed to respond, continuing their strategy of procedural evasion and invocation of an illegal injunction. Appellants consistently advanced their civil RICO claims, documenting how the entire case fits the statutory pattern of racketeering, obstruction, and judicial manipulation. Rather than confront these well-pleaded and substantiated RICO allegations, Appellees instead appropriated Appellants' own language—accusing Appellants of "judicial manipulation"—while steadfastly ignoring their own conduct and the unresolved, material conflict between Tyler Perry and Judge Thrash's family. At no point did Appellees address the substance of the RICO claims or the specific predicate acts, nor did they answer the detailed factual narrative and legal authorities provided by Appellants. This ongoing evasion is itself evidence of the pattern of misconduct and collusion that underlies Appellants' Rule 60(b) and (d) motions, and it stands in direct violation of the adversarial process and due process guarantees under the U.S. Constitution.

**F. The Necessity of Appellants' Supplemental Filings and Judicial Integrity**

Each supplemental filing by Appellants was compelled by new facts and procedural developments, including the discovery that critical documents—such as the transaction list and supporting evidence—were never transmitted to the appellate court. Appellants acted diligently to ensure the record was complete and that the appellate court was apprised of all relevant evidence and controlling law. Appellants also filed supplements to clarify the impact of Appellees' improper ex parte submissions and to ensure that the court had before it the full scope of U.S. Supreme Court and Eleventh Circuit authority governing fraud on the court, due process, and the mandatory duty of judicial recusal.

**G. The Judge's Refusal to Address Merits or Recuse—A Due Process Violation**

*G. The Judge's Refusal to Address Merits or Recuse—A Structural Due Process Violation*

Following the district court's entry of judgment, Appellants filed well-supported motions under Rule 60(b) and (d), raising serious allegations of fraud on the court and judicial conflict of interest. At this stage, Judge Thrash was a named defendant, accused of acting outside the scope of his judicial capacity. Notably, the United States Attorney's Office—which had previously defended Judge Thrash for

official acts—declined to appear or respond to these post-judgment motions, underscoring the indefensibility of the judge's conduct as "judicial acts."

Despite these clear conflicts and the absence of federal defense, Judge Thrash refused to recuse and continued to issue perfunctory orders, failing to address the substantive merits of Appellants' motions. Such conduct constitutes a structural due process violation. The law is unequivocal: when a judge is credibly accused of fraud or conflict, recusal is mandatory, and a neutral arbiter must decide the matter. See 28 U.S.C. § 455; Caperton v. A.T. Massey Coal Co., 556 U.S. 868, 881 (2009) ("[D]ue process requires recusal where the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable."); Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 865 (1988) (recusal required to preserve public confidence in judicial neutrality).

The judge's refusal to recuse, combined with the government's telling silence, deprived Appellants of a fair and impartial adjudication, warranting vacatur and reassignment.

## H. The Pattern of Judicial and Defense Evasion Supports Appellants' RICO Claims

The defense's and the judge's persistent refusal to answer or adjudicate the merits—coupled with the use of procedural maneuvers to block Appellants'

filings—directly supports the RICO predicate acts of obstruction, fraud on the court, and manipulation of the judicial process. The record demonstrates that Appellants' filings were not only justified but required to expose and remedy a pattern of racketeering and judicial irregularities. Appellees' continued reliance on procedural barriers and their failure to respond to the substance of the claims only reinforce the ongoing harm and the necessity for relief under Rule 60(b) and (d).

## I. The Appellees' Use of Appellants' Arguments to Deflect Their Own Misconduct

In their response to Appellants' motion to recall the mandate, Appellees cynically adopted Appellants' own language, accusing Appellants of "judicial manipulation" while failing to address the actual evidence of collusion, coercion, and judicial conflict presented by Appellants. This deflection tactic is itself further evidence of bad faith and a deliberate effort to obscure the true record. Appellees never addressed the central issue: the improper relationship between Tyler Perry and Judge Thrash's family, nor did they answer the substantive RICO or due process arguments.

## J. The Cumulative Effect: A Complete Denial of Due Process

Taken together, Appellees' procedural defaults, their failure to answer the merits, reliance on an illegal and void injunction, and the judge's refusal to recuse or rule

on the substance of Appellants' motions, constitute a wholesale denial of due process and judicial integrity. This pattern of conduct is precisely what the Supreme Court and Eleventh Circuit have condemned as incompatible with the adversarial system and the fundamental right to a fair hearing. See Armstrong v. Manzo, 380 U.S. 545, 552 (1965); Haines v. Kerner, 404 U.S. 519 (1972); Greenlaw v. United States, 554 U.S. 237, 243 (2008).

# X. APPELLANTS' RIGHT TO INVOKE POST-JUDGMENT RELIEF FOR FRAUD ON THE COURT IS SUPPORTED BY CONTROLLING LAW; APPELLEES CITE NO CONTRARY AUTHORITY

## A. Appellants' right to bring post-judgment motions

Appellants' right to bring post-judgment motions for fraud on the court is firmly established by the U.S. Supreme Court and Eleventh Circuit. See *Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* 322 U.S. 238, 246 (1944) ("There is no time limit for setting aside judgments for fraud upon the court. The integrity of the judicial process must be preserved."); *Calderon v. Thompson,* 523 U.S. 538, 554 (1998); *Booker v. Singletary,* 90 F.3d 440, 442 (11th Cir. 1996); Fed. R. Civ. P. 60(d)(3).

Appellees have not cited a single controlling case or statutory authority that overrides or limits Appellants' right to seek such relief. Their opposition is based

solely on mischaracterizations, procedural distractions, and the repeated invocation of the "vexatious litigant" label—none of which can trump binding U.S. Supreme Court or Eleventh Circuit precedent.

Appellees' reliance on Judge Thrash's statement in Order 138—that Appellants failed to state a claim for a predicate act of copyright infringement—ignores the procedural record and the law. When Appellees argued in Document 74 that Appellants failed to state a claim under Rule 12(b)(6), Appellants exercised their right under Fed. R. Civ. P. 15(a)(1) to amend the complaint as a matter of right. The amended complaint (Doc. 85) superseded prior pleadings and cured any alleged deficiencies. The law is clear: "An amended complaint supersedes the original complaint and renders it of no legal effect." See Fritz v. Standard Sec. Life Ins. Co., 676 F.2d 1356, 1358 (11th Cir. 1982).

Moreover, Judge Story's earlier ruling (Doc. 15) found that Appellants had, in fact, stated a claim. The subsequent effort by Judge Thrash and the Appellees to resurrect the "failure to state a claim" argument after amendment—and to mischaracterize the RICO claims as mere copyright infringement—is a transparent attempt to rewrite the record and evade the merits. The only reason the appellate court accepted this narrative was because critical documents were withheld from review.

Appellees' entire response is thus unsupported by law and based on a misrepresentation of both the procedural posture and the substance of Appellants' claims. Appellants' filings are not vexatious; they are a lawful, good-faith effort to remedy fraud on the court and protect the integrity of the judicial process.

## B. Evasion of Law Using Injunction Illegally

Permitting the Appellees to continue evading the law through reliance on a void injunction, concealment of critical documents, and procedural manipulation would not only violate controlling law but would also result in a manifest injustice. The record demonstrates that Appellees have been allowed to circumvent fundamental rules of procedure and due process for far too long, to the detriment of both Appellants and the integrity of the judicial process itself. Such tolerance of lawlessness undermines public confidence in the courts and offends the basic principles of fairness and justice that this Court is bound to uphold. The Supreme Court has repeatedly emphasized that courts must not be complicit in manifest injustice or the perpetuation of fraud upon the court. See *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944); *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 881 (2009).

## XI. CLARIFICATION OF PARTY DESIGNATIONS

For the avoidance of doubt, Appellants and Appellees are referred to herein as "Appellants" and "Appellees," respectively, in accordance with Eleventh Circuit practice. Any prior use of "Plaintiffs" and "Defendants" in filings related to the recall of the mandate should be understood to refer to the parties in their current appellate capacities as Appellants and Appellees.

## XII. CONCLUSION

**For the foregoing reasons, Appellants respectfully request that the Court:**

1. Reject Appellees' mischaracterizations and factual misstatements;

2. Recognize that Appellants' filings are proper, necessary, and protected by law, including the U.S. Constitution, Supreme Court, and Eleventh Circuit precedent;

3. Clarify that no injunction or "vexatious litigant" order may bar redress for fraud upon the court, judicial misconduct, or the recall of a mandate;

4. Take judicial notice of the true procedural history and docket, including the entry of default, the judge's status as a defendant, and the missing appellate record;

5. Final Request for Recall of the Mandate Due to Appellees' Failure to Answer: Because Appellees have failed to answer or oppose any of the substantive claims and legal authorities presented by Appellants—including

the grounds for fraud upon the court, judicial misconduct, and default—the record stands unrebutted. Under controlling Eleventh Circuit and Supreme Court precedent, such silence operates as an admission of the well-pleaded facts and legal arguments. Accordingly, Appellants respectfully renew their request that this Court recall its mandate, grant all appropriate relief, and enter judgment in favor of Appellants on all claims properly before the Court.

6. Grant such further relief as justice requires.

Respectfully submitted,

Dated: on the 9th day of September 2025

Terri Tucker (Lowe)
Address: 1136 Joslin Path
Douglasville, GA 30134
Phone: 678-822-4593
Email: terrilowe43@gmail.com
Pro Se Plaintiff

William James
Address: 14920 Ashland Ave
Harvey, Illinois 60426
Phone: 773-990-9373
Email: bj255758@yahoo.com
Pro Se Plaintiff

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32(g)(1) and 11th Cir. R. 32-4, I certify that this motion complies with the type-volume limitation set forth in FRAP 27(d)(2). According to the word-processing system used to prepare this document, the motion contains (6,478) words, excluding the parts of the motion exempted by FRAP 32(f). The motion has been prepared in a proportionally spaced typeface (Times New Roman, 14-point font) with double spacing and 1-inch margins.

Dated: On the 09th Day of September.

Terri Tucker (Lowe)
Address: 1136 Joslin Path
Douglasville, GA 30134
Phone: 678-822-4593
Email: terrilowe43@gmail.com
Pro Se Plaintiff

William James
Address: 14920 Ashland Ave
Harvey, Illinois 60426
Phone: 773-990-9373
Email: bj255758@yahoo.com
Pro Se Plaintiff

## VI. CERTIFICATE OF SERVICE

We hereby certify that on 09/09/2025, we filed the foregoing Motion to Recall

Mandate and all supporting exhibits by Mail as required by the Eleventh Circuit's

filing instructions.

### Appellees Attorneys:

Lori M. Beranek
Assistant United States
Attorney
600 U.S. Courthouse
75 Spring Street SW
Atlanta, GA 30303

Tom J. Ferber, Esq
7 Times Square
New York, NY 10036-
6569

Richard Gordon, Esq
1495 Powers Ferry
Road Ste 101
Marietta, GA 30067

Executed on 9th Day of September, 2025.

Respectfully submitted,

Terri Tucker (Lowe)
Address: 1136 Joslin Path
Douglasville, GA 30134
Phone: 678-822-4593
Email: terrilowe43@gmail.com
Pro Se Plaintiff

William James
Address: 14920 Ashland Ave
Harvey, Illinois 60426
Phone: 773-990-9373
Email: bj255758@yahoo.com
Pro Se Plaintiff